UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| XENA AMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02652-MPB-KMB |
| | ) |
| FEDERAL EXPRESS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Xena Ames sues her former employer, Defendant Federal Express Corporation ("FedEx"). Ames alleges that FedEx (1) failed to accommodate her disabilities in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) subjected her to a hostile work environment based on her race or color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and in violation of 42 U.S.C. § 1981; (3) subjected her to a gender-based hostile work environment in violation of Title VII; (4) failed to promote her because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; and (5) retaliated against her for filing a federal lawsuit complaining of workplace discrimination in violation of Title VII. FedEx moves for summary judgment on all counts. For the reasons that follow, FedEx's motion for summary judgment is **GRANTED**.

**I.     Background**

Xena Ames is a 52-year-old Black woman formerly employed by FedEx. (Docket No. 73-1 at ECF pp. 2, 8). At all times relevant, Ames was employed as a "dangerous goods handler." (*Id.* at ECF pp. 13–14). As a dangerous goods handler, Ames was responsible for making sure that "proper hazardous goods were going into the can [and] doing the proper paperwork on the

computer system." (*Id.* at ECF p. 15). Ames worked for FedEx from December 13, 2017, until her resignation on August 20, 2021. (*Id.* at ECF pp. 7–9). Additional facts related to Ames's particular claims and FedEx's arguments at summary judgment are recounted below.

### A. Previous Lawsuit

Ames has previously sued FedEx for race, sex, age, and disability discrimination. (Docket No. 73-4, *Ames I* Order at ECF p. 1). Her final amended complaint in that case was filed on May 20, 2020, and the corresponding EEOC charge covered actions between July 27, 2018 and July 8, 2019. Judge Sweeney dismissed her case on March 29, 2021. (*Id.* at ECF pp. 1–2). Ames then filed a new EEOC charge on April 22, 2021, covering allegations dating back to January 2021. This suit followed.

### B. Disability

Ames suffered a back injury while serving in the Army in Iraq. (Docket No. 74-4 at ECF pp. 15–16). Ames never had any physical limitations or restrictions related to the back injury, and a doctor never advised her to heed any restrictions. (*Id.* at ECF p. 17). When she started working with FedEx, Ames did not have any limitations or restrictions relating to any disability. (Docket No. 73-1 at ECF p. 28). In October 2020, Ames hit her leg against "one of the breaks to the can," injuring the leg. (*Id.*). Ames asked for reasonable accommodations, and FedEx placed her on light duty. (*Id.* at ECF pp. 29–30). However, her supervisor, Chris Pipes, removed her from light duty and put her back on the line. (*Id.* at ECF p. 30). In December 2020, Ames requested but was denied a transfer. (*Id.* at ECF p. 28).

### C. Race

In her Complaint, Ames alleged that "Plaintiff walked into the ramp room [on March 11, 2021] and a coworker said, n****r, n****r." (Docket No. 1, Compl. at ECF p. 3 (asterisks

added)). She also alleged she reported the incident "to management," but nothing was done. (*Id.*). In her deposition, Ames stated that her Complaint should not have stated it was "a coworker" who uttered the racial slur. (Docket No. 74-3 at ECF p. 29). Rather, "it was a manager." (*Id.*). Ames had only seen the manager a couple of times, and the manager left FedEx shortly after the incident. (*Id.*). Ames does not know the name of the manager. (*Id.*). She claims to have written the manager's name down in "another report" or "one of [her] notes." (*Id.*). If Ames wrote the purported manager's name down somewhere, that note was not submitted as evidence.

Although her supervisor, Chris Pipes, never said anything directly that indicated he was biased against African Americans, Ames believes he was prejudiced based on his actions. (Docket No. 74-4 at ECF p. 58–59). For example, Pipes "would send all of the Black people over to the ORD line whenever they needed help." (Docket No. 73-2 at ECF p. 16). The tag of the line, "O-R-D," is a company designation, and Ames does not know what it stands for. (Docket No. 74-4 at ECF p. 60). Ames feels that being sent to the ORD line "was like a subliminal message indicating that I had an o[dor]." (*Id.* at ECF p. 57). "[I]t was because the tag of that line is ORD, as if we all smel[led] bad, and you sent us away." (*Id.* at ECF p. 60). According to Ames, Pipes would make a comment about Ames's smell if she was sweating. (*Id.*). Ames claims that other African American workers felt the same way about being sent to ORD, but they "didn't stay too long" and she does not "know any names." (*Id.* at ECF p. 61). The ORD line was not considered a less desirable place to be. (*Id.* at ECF p. 60).

**D.    Sex**

Ames "had guys hit on" her at work. (Docket No. 73-2 at ECF p. 25). Ames believes her coworkers hit on her because of rumors and videos being passed around by the "Eastern Stars," a masonic organization, portraying her as a "hooker or a ho." (*Id.*).

3

Ames also testified that Chris Pipes would wink at her as she walked by because, according to Ames, Pipes is able to see inside of her bathroom and know what underwear she has on before she comes into work. (Docket No. 74-3 at ECF pp. 23–24). Pipes also would "come up behind [her] and rub up against [her]" when she was lifting boxes. (*Id.* at ECF p. 24). Ames claims to have sent messages to HR about these incidents. (*Id.*). No such messages have been submitted in her designation of evidence.

### E. Age

Ames at some point "tried to apply for . . . a management position," but felt she was passed up by Chris Pipes because of her age. (Docket No. 73-2 at ECF p. 18). Ames believed she did not get the job because she was "the oldest one, maybe, on the line." (*Id.* at ECF p. 19). However, Pipes never said anything about her age. (*Id.*). He never said anything that made Ames think he did not like older workers in general. (*Id.*).

### F. Retaliation and Resignation

Ames resigned after feeling she was being forced out the door because she felt isolated. (*Id.* at ECF p. 8). Every time she made a complaint to HR, she was told they could not help her because she had a lawsuit pending. (*Id.*). She asked her manager, Bradon Luedke, for some uniforms and he said that he "put in a document" to get the uniforms for her. (*Id.*). When that turned out to be false, Ms. Ames emailed Luedke her resignation, and he accepted it. (*Id.* at ECF pp. 8–9).

## II. Legal Standard

"Summary judgment is proper only if the defendants show that no material facts are in genuine dispute and that they are entitled to judgment as a matter of law." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (citation omitted). "A genuine dispute over a material fact exists if the

4

evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id.* (internal quotation marks and citation omitted). In resolving FedEx's motion for summary judgment, the Court draws all reasonable inferences in Ames's favor. *Id.*

### III. Discussion

FedEx moves for summary judgment on all of Ames's claims, arguing that: (A) all claims based on allegations covered by her 2019 lawsuit are barred under the doctrine of *res judicata*; (B) the ADA claim cannot survive because FedEx accommodated Ames and her injuries were not disabling; (C) the racially hostile work environment claim fails because the alleged harassment was not severe or pervasive; (D) the sexually hostile work environment claim fails because the alleged harassment was not severe or pervasive; (E) the ADEA claim falls because Ames cannot establish a prima facie case; and (F) the retaliation claim is unsuccessful because Ames has not suffered an adverse action causally related to a protected activity. The Court will analyze each argument in turn.

#### A. *Res Judicata*

*Res judicata* "comprises two distinct doctrines regarding the preclusive effect of prior litigation." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). "The first is issue preclusion (sometimes called collateral estoppel), which precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Id.* "The second doctrine is claim preclusion (sometimes itself called res judicata)." *Id.* Claim preclusion prevents a party from raising issues that could have been raised in a prior action. *Id.* It applies when three criteria are met: "(1) identity of parties, (2) identity of claims, and (3) a prior final judgment on the merits." *Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021). The purpose of claim preclusion is to "minimize the expense and vexation of attending multiple lawsuits,

conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) (cleaned up and quotation omitted).

FedEx asserts claim preclusion to the extent that the alleged malfeasance in this case "occurred during the time period covered by [Ames's] 2019 lawsuit and its many amendments." (Docket No. 72, Def.'s Br. at ECF p. 9). Ames agrees that any allegations covered by her previous lawsuit are barred by claim preclusion, but she submits that her claims in the present case are based on allegations dating "back to early March of 2021" and are thus not barred. (Docket No. 74, Pl.'s Resp. at ECF p. 7). That concession works for most claims, but it does not make sense in the context of her ADA claim.

Ames's ADA claim is based on a back injury that predated her employment with FedEx, as well as an October 2020 leg injury and December 2020 transfer request—all facts which were in existence at least three to five months before Judge Sweeney dismissed Ames's ADA claim against FedEx in *Ames I*. (*Ames I* Order at ECF pp. 6–10, 22). While Ames points out that her complaint in *Ames I* was last amended on May 20, 2020, she fails to explain why she could not have moved for leave to amend her complaint to include the new factual allegations in the months before the case was dismissed. Nor does she explain why she could not have simply included those allegations in a brief consistent with her complaint—as she was already asserting an ADA claim. *See Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (noting a plaintiff may add facts "by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint"). In short, Ames fails to address why her ADA claim in this case is not a claim that "could have been raised and decided" in the earlier case. *Lucky Brand Dungarees*, 140 S. Ct. at 1594; *see also Matrix IV*, 649 F.3d at

547. Ames's failure results in waiver. *Lanahan v. Cnty. of Cook*, 41 F.4th 854, 866 (7th Cir. 2022) (perfunctory and underdeveloped arguments are waived).

      **B.**     **ADA**

Even if Ames's ADA claim is not barred by claim preclusion, it fails on the merits. Ames asserts that FedEx failed to accommodate her despite knowing she had a permanent back injury and a "temporary" leg injury. (Pl.'s Resp. at ECF p. 10). To establish a claim for a failure to accommodate, she must show that: (1) she is a qualified individual with a disability; (2) FedEx was aware of her disability; and (3) FedEx failed to reasonably accommodate her disability. *Brooks v. City of Pekin*, 95 F.4th 533, 538 (7th Cir. 2024). Ames's claim fails at the first step.

A qualified individual with a disability is someone who has either (A) "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (B) "a record of such an impairment"; or (C) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Ames does not expressly argue that either her back injury or her leg injury meets one of these three definitions, and she does not "have any documents" recording her alleged disabilities. (Docket No. 74-4, First Ames Dep. at ECF p. 18). Regardless, neither alleged disability substantially limited her activities.

First, Ames suggests that a back injury she suffered while serving overseas in the armed forces is a qualifying disability. However, she repeatedly testified that the back injury did not physically limit her or restrict her activities. (*Id.* at ECF pp. 17, 22; Docket No. 73-1 at ECF p. 28 ("No, [I] don't have any limitations with my disability. But if I'm being overworked or abused, then I will have pain or need therapy or extra medication.")). Further, there is no evidence she ever asked for an accommodation related to her back injury.

Second, Ames contends that she became temporarily disabled in October 2020 when she "hit [her] leg against one of the breaks to the can." (Docket No. 73-1 at ECF p. 28). There is no evidence that Ames's leg injury was anything other than a minor, fleeting injury that did not prevent her from performing her primary job duty as a dangerous goods agent—putting information into a computer. (Docket No. 73-2, Sec. Ames Dep. at ECF pp. 61–62). "Intermittent, episodic impairments are not disabilities, the standard example being a broken leg." *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995). Ames has not established that her leg injury was substantially limiting such that it became a disability under the ADA. Therefore, her ADA claim cannot survive.

C.   **Racially Hostile Work Environment**

Next, FedEx moves to dismiss Ames's Title VII and Section 1981 claims for a race-based hostile work environment. To prove a Title VII hostile work environment claim based on her race, Ames must show: (1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on her race; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1115–16 (7th Cir. 2022). Claims under Section 1981 are analyzed "in the same manner." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814 (7th Cir. 2022).

FedEx challenges that the alleged harassment was neither severe nor pervasive. The Court considers the totality of the circumstances when determining whether conduct is severe or pervasive. *Scaife*, 49 F.4th at 1116. The factors the Court considers include the frequency of the conduct; how offensive a reasonable person would deem it to be; whether it is physically threatening or humiliating conduct as opposed to verbal abuse; whether it unreasonably interferes with an employee's work performance; and whether it is directed at the victim. *Id.*

8

Ames's claim is based on two pieces of evidence: that an unnamed manager allegedly said "n****r, n****r" when she walked into a room and that Chris Pipes sometimes assigned her to the "ORD" line. Considering the totality of the circumstances, Ames has not presented sufficient evidence to survive summary judgment. The Court will address the ORD evidence first to provide proper context for why the alleged use of a racial slur was not sufficiently severe or pervasive under the circumstances of this case.

Ames's assignment to the ORD line contributes nothing to her hostile work environment claim because the evidence does not show the assignment was either based on Ames's race or objectively offensive. Although her supervisor, Chris Pipes, never said anything that made her believe he was prejudiced against African Americans, Ames believed Pipes was prejudiced because he sent African American workers to the ORD line. (Docket No. 74-4 at ECF p. 59). Ames felt assignment to the ORD line was offensive because "it was like a subliminal message indicating that [she] had an o[dor]." (*Id.* at ECF p. 57). To be clear, the ORD line was not a less desirable assignment. (*Id.* at ECF p. 60). Rather, Ames appears to believe her assignment to the line was offensive solely because she confuses the tag of the line, "ORD," for "ODR," which sounded to her like "odor" and indicated to her that Pipes believed she smelled. (*Compare id.* ("[I]t was because the tag of that line is *ORD*, as if we all smell[ed] bad.") (emphasis added); *with* Pl.'s Resp. at ECF p. 9 (repeatedly referring to the line as "ODR")).[1] So, while the Court acknowledges that Ames may honestly believe her assignment to the ORD line was discrimination based on her race, the subjective beliefs of plaintiffs do not, by themselves, create

---

[1] Though Plaintiff's brief uses the acronym "ODR," the deposition testimony consistently says, "ORD," and there is no indication this is a transcription error. (*See, e.g.*, Docket No. 74-4 at ECF p. 60). In fact, Defense Counsel emphasizes that it is "O-R-D" in the deposition. (*Id.*).

a genuine issue of material fact. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011). No reasonable jury would believe the ORD assignment was race-based harassment.

Turning to the alleged use of a racial slur, "[i]t goes without saying that the N-word is an egregious racial epithet." *Scaife*, 49 F.4th at 1116. Even a one-time use of the word can in some circumstances warrant Title VII liability. *Id.* Here, though, the slur was not used in the context of harassment that could remotely be characterized as pervasive. There is no other evidence of race-based harassment in the record, and the alleged slur was uttered in a one-time incident by an unidentified manager who Ames had only seen a couple of times, and who left the company shortly thereafter. (Docket No. 74-3 at ECF p. 29); *Scaife*, 49 F.4th at 1116 (factors include frequency of the discriminatory conduct).[2] The severity of the alleged epithet is undercut by the fact that the manager left shortly afterward, eliminating the only source of harassment and obviating the need for FedEx to take further action against the manager. In addition, Ames has not indicated the incident impacted her work performance in any way, suggesting the epithet was not sufficiently severe to alter the conditions of her employment. *See id.* at 1116 (factors include whether the conduct unreasonably interferes with an employee's work performance).

Finally, the severity of the incident is further undercut by the fact that there is no evidence the unidentified manager held supervisory authority over Ames. (*See* Docket No. 74-3 at ECF p. 29 ("I had only seen her, like, a couple of times.")). In *Scaife*, where the plaintiff heard from a coworker that a supervisor in another department called her a "stupid fucking n****r," the Seventh Circuit reasoned that the fact that the utterer was a supervisor meant the epithet should

---

[2] Plaintiff now argues the slur was used in two incidents, once by a coworker and once by a manager, but this misstates the record. Plaintiff's Complaint says that a coworker uttered the slur, (Compl. at ECF p. 3), but she clarifies in her deposition that the Complaint should have said it was a manager, (Docket No. 74-3 at ECF p. 29).

10

be given more weight than if he were just a coworker, but "the fact that [the utterer] did not have direct supervisory control over [the plaintiff] is yet another weakness in her claim." 49 F.4th at 1117 (asterisks in original).

On these facts, where the only evidence of race-based harassment is a single incident in which a manager—who was not the plaintiff's supervisor and who left the company shortly thereafter—uttered an epithet as the plaintiff walked into the room, no reasonable jury could find that the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 1115 (citation omitted). FedEx is entitled to summary judgment on Ames's race-based hostile work environment claim.

### D.     Sexual Harassment

FedEx also contends that Ames has not shown the alleged sexual harassment she suffered was severe or pervasive. "To establish a claim of hostile work environment based on sex, a plaintiff must establish that she was (1) subjected to unwelcome sexual conduct, advances, or requests; (2) because of her sex; (3) that were severe or pervasive enough to create a hostile work environment; and (4) that there is a basis for employer liability." *Paschall*, 28 F.4th at 812–13 (quotations omitted). When a supervisor is the harasser, the employer is "strictly liable for the alleged conduct if there was a tangible employment action such as a discharge, demotion, or a change in working conditions." *Roby v. CWI, Inc.*, 579 F.3d 779, 784 (7th Cir. 2009). When a coworker is the harasser, however, the employer is only liable if the employee shows that her employer has been negligent in discovering or remedying the harassment. *Paschall*, 28 F.4th at 813. Ames testified that she was subjected to both coworker and supervisor harassment.

With respect to coworker harassment, Ames believes that coworkers "hit on" her because of "rumors being passed around" by "the Eastern Stars and the Masons." (Docket No. 73-2 at

ECF p. 25). FedEx contends that the alleged harassment did not rise to the level of actionable conduct. (Def.'s Reply at ECF pp. 18–19). In her response, Ames mentions coworker harassment once in a single clause before quickly shifting her attention to supervisor harassment. (Pl.'s Resp. at ECF p. 14 ("In addition to being 'hit on' by coworkers, Plaintiff testified that [a supervisor harassed her].")). This offhand reference to alleged coworker harassment does not address FedEx's argument that the conduct was neither severe nor pervasive. *See Lanahan*, 41 F.4th at 866 (perfunctory and underdeveloped arguments are waived). More importantly, Ames has failed to present evidence detailing how often the harassment occurred, how egregious it was, or whether FedEx was negligent in discovering or remedying the harassment. Without such detail, the mere statement that she has been "hit on" by coworkers does not create a genuine dispute of material fact that the incidents rose to the level of severe or pervasive harassment. *See, e.g.*, *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840–41 (7th Cir. 2009) ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment.").

      FedEx also argues that Ames has not presented a triable issue of supervisor harassment. The Court agrees. Ames testified that her supervisor, Chris Pipes, would wink at her when she walked by. But the only evidence that Pipes's looks were based on Ames's gender is her unsubstantiated belief that Pipes can see inside of her bathroom and was aware of a sex tape that no evidence shows was ever disseminated. (*See* Docket No. 74-2 at ECF pp. 23–24 (in response to a question about Pipes's alleged winks: "That's what I was talking about, like, the flirtation. Like you can see me in my bathroom and you know what panties and stuff I have on before I even come in to work."); Pl.'s Resp. at ECF p. 15 n.3 (admitting that no evidence shows the sex tape was disseminated)). In any case, "relatively isolated instances of non-severe misconduct will

not support a hostile work environment claim." *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) (quotation marks omitted). Because it is unclear how frequent Pipes's alleged winks were, there is no suggestion they were physically threatening, and there is no evidence they unreasonably impacted Ames's work performance, this conduct contributes little, if anything, to establishing a hostile environment. *See Hambrick v. Kijakazi*, 79 F.4th 835 (7th Cir. 2023) (factors include the frequency of the conduct, whether it is physically threatening, and whether it unreasonably impacts work performance).

Ames also testified that Pipes would "come up behind [her] and rub up against [her]" when she was "working with boxes and stuff." (Docket No. 74-2 at ECF p. 24).[3] However, Ames provides little detail about this incident, so it is unclear whether the conduct was sexual or whether Pipes was just trying to get by and the incident was "merely accidental." *See Mercer v. Cook Cnty.*, 527 F. App'x 515, 521 (7th Cir. 2013) (reasoning that alleged harasser's bump into plaintiff's backside could have been an accident). "But even if this incident were not accidental, it would not constitute the kind of severe or pervasive conduct necessary to create an objectively hostile work environment." *Id.* at 522; *see also Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 463–64 (7th Cir. 2002) (affirming summary judgment for employer where supervisor twice rubbed the plaintiff's back and once stared at her chest during a uniform inspection); (affirming summary judgment for employer where employee was subjected to "teasing[,] . . . staring and attempts to make eye contact, and four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks"). Like the alleged winks, Ames has provided little detail about the frequency of the conduct, its severity, or its impact on her work performance. Accordingly, Ames

---

[3] Ames made similar allegations about another supervisor, David Murtland, but she acknowledges that her claims related to Murtland were dismissed in her previous case and are barred by *res judicata*. (Pl.'s Resp. at ECF p. 14).

13

has failed to present sufficient evidence from which a reasonable jury could conclude Pipes's alleged conduct matched the level of severity or pervasiveness required by Seventh Circuit caselaw. *See, e.g., Mercer*, 527 F. App'x at 521.

    **E.**    **ADEA**

FedEx next contends that Ames cannot establish a prima facie case of age discrimination under the ADEA. To establish a prima facie case, Ames must produce evidence that: (1) she is over forty years old; (2) she was meeting FedEx's legitimate expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated younger employees received better treatment. *Miller v. Borden, Inc.*, 168 F.3d 308, 313 (7th Cir. 1999); *Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022). If Ames can establish a prima facie case of age discrimination, the burden shifts to FedEx to produce evidence demonstrating that its actions were supported by legitimate, nondiscriminatory reasons. *Brooks*, 39 F.4th at 434. If FedEx produces a legitimate reason, the burden shifts back to Ames to demonstrate that FedEx's stated reason is pretextual. *Id.* The ultimate question is whether the evidence considered as a whole would permit a reasonable factfinder to conclude that Ames's age caused the adverse employment action. *Id.* at 433. Here, Ames has not established that similarly situated younger employee received more favorable treatment.

The only age-related adverse action Ames claims she suffered is that Chris Pipes denied her a promotion to the ramp agent position. (Pl.'s Resp. at ECF p. 11–12). Ames "concedes that [she] was unable to identify the age of successful applicants [for the position], but [she] relies on the fact that she was the oldest employee on her line at the age of fifty-two." (*Id.* at ECF p. 12). Further, Ames testified she does *not* believe Pipes is biased or prejudiced against older employees. (Docket No. 73-2 at ECF p. 26 ("Q: And do you believe that Mr. Pipes is bias[ed] or

14

prejudice[d] against older employees? A: No."). In other words, Ames has identified no comparators, has presented no other evidence supporting an inference that her age played a role in any employment decisions, and she does not even believe the supervisor who failed to promote her bore any ageist prejudice. Rather, she invites the Court to deny summary judgment merely on speculation that she was passed over for a promotion because she was the oldest applicant, without any "amplifying detail of the [younger] employees' qualifications or employment history that would allow this Court to comfortably conclude their hiring was the result of discriminatory motive rather than some other explanatory variable." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018). Because Ames bears the burden of identifying proper comparators and failed to do so, summary judgment for FedEx is appropriate. *Id.* at 723–24 (holding plaintiff failed to establish prima facie case where plaintiff identified thirty-seven younger employees that were hired but failed to show those employees were similarly situated to plaintiff in all material respects).

### F.     Retaliation

Finally, FedEx argues Ames is unable to show she suffered an adverse action in retaliation for her 2019 lawsuit. "To defeat summary judgment, [Ames] must offer evidence from which a reasonable jury could find: (1) [s]he engaged in an activity protected by the statute; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quotation omitted). Ames argues FedEx retaliated by subjecting her to sexual harassment, forcing her to work on the ORD line, ignoring her disabilities, denying her the uniforms she wanted, and telling her that her complaints could not be addressed because she has an attorney.

Most of this alleged harassment has been already rejected above, and it fares no better here. Ames accuses Chris Pipes of sexually harassing her, assigning her to the ORD line, and ignoring her light duty restrictions, but she has not submitted evidence from which a reasonable jury could conclude Chris Pipes was even aware of her 2019 lawsuit to which he was not a party. *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512–13 (7th Cir. 2021) (requiring evidence that defendant had actual knowledge of the protected activity). Thus, Ames has not raised a genuine issue of material fact that Chris Pipes's alleged actions were in retaliation for her previous lawsuit. *Id.* at 513.

That leaves Ames's complaints to Bradon Luedke that her uniforms were excessively worn, torn, and damaged—a concern Ames ultimately cited as the reason for her resignation. (Docket No. 73-3, Ames Dep. Exs. at ECF p. 2; Docket No. 74-2, Ames Decl. at ECF p. 2). When Ames tried to complain about the uniform issue to HR, she was told they could not do anything because she had a lawsuit pending. (Docket No. 73-1 at ECF p. 8). Though Ames's Complaint labeled her resignation a constructive discharge, (Compl. at ECF p. 3), she dropped the constructive discharge theory in her response, (*see generally* Pl.'s Resp.). In any case, Ames cannot show constructive discharge.

"An employee is constructively discharged when, from the standpoint of a reasonable employee, the working conditions become unbearable." *Wright v. Illinois Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 527 (7th Cir. 2015). A plaintiff can show constructive discharge either by showing conditions even more egregious than that required for a hostile work environment claim or by showing that the employer has acted in such a manner as to communicate to a reasonable employee that she will be terminated. *Id.* Ames's complaints about uniforms come nowhere close to meeting this high bar.

In the absence of a constructive discharge, it appears that Ames contends the uniform incident was itself an adverse action, though she wholly fails to demonstrate that the incident was "a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quotation and alteration omitted). Accordingly, summary judgment is granted on her retaliation claim.

### IV. Conclusion

FedEx's Motion for Summary Judgment (Docket No. 71) is **GRANTED** on all counts. Final judgment shall issue by separate order.

**IT IS SO ORDERED**.

Dated: April 24, 2024

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.